OPINION OF THE COURT
Herbert Shapiro, J.
Defendant is charged with the commission of the crime*of theft of services (Penal Law, § 165.15, subd 6). A preliminary hearing was held at the conclusion of which the defendant moved for dismissal. Decision on the motion was reserved at the request of counsel pending the receipt of legal memoranda.
At the hearing an investigator in the employ of Consolidated Edison testified, in substance, that he had made an examination of the electric meter servicing the defendant’s business premises and had discovered that the meter had been tampered with. Such tampering, he testified, resulted in the meter registering a lesser amount of electrical current than that actually consumed, and as a consequence, the defendant being billed at a reduced amount.
There was no direct evidence adduced at the hearing which in any way linked the defendant with the tampering of the meter or demonstrated that he had knowledge thereof. In fact, the defendant, who elected to testify, stated that he had not tampered with the meter, had not procured anyone to do so and had not known that such tampering had taken place.
It is at once apparent that the proof brought forth at the hearing, in and of itself, is insufficient to support a finding of the requisite "reasonable cause” to believe that the defendant committed the crime charged; a finding essential before the defendant may be held for further proceedings.
*689 Subdivision 6 of section 165.15 however, contains the following language: "In any prosecution under this subdivision proof that service has been intentionally diverted from passing through a meter, or has been intentionally prevented from being correctly registered by a meter provided therefor, or has been intentionally diverted from the pipes, wires or conductors of the supplier thereof, shall -be presumptive evidence that the person who accepts or receives the use and benefit of such service has done so with knowledge of the condition so existing”.
While the direct proof was, as indicated, insufficient to support a finding of "reasonable cause”, the statutorily created presumption clearly supplies that which was missing.
The defendant impliedly concedes that the presumption supplies the evidence needed to hold him for trial. It is argued, however, that the presumption created is unconstitutional and therefore cannot be invoked to support the necessary finding of "reasonable cause”.
The issue thus to be resolved is whether the presumption created by the language of subdivision 6 of section 165.15 is constitutionally valid.
While the statute is a relatively new one and it appears that the validity of the presumption therein contained has not yet been judicially reviewed, presumptions in general are not new to the criminal law. For example, there are presumptions with respect to the possession of stolen property (Penal Law, § 165.55); the issuance of a bad check (Penal Law, § 190.10); the possession of a controlled substance (Penal Law, § 220.25); in gambling offenses (Penal Law, § 225.35); in obscenity cases (Penal Law, § 235.10); in weapons cases (Penal Law, § 265.15). All of these presumptions have been the subject of intensive judicial examination, comment and, ultimately, approval by the courts of our State.
The underlying rationale of the New York courts’ approval of the various criminal presumptions has been that the facts presumed have "a natural, not an unreasonable or unnatural, connection with facts proven”. (People v Hildebrandt, 308 NY 397, 400.) Alternatively stated, the test is "whether, based on life and life’s experiences, a rational connection between the fact presumed and the ultimate fact presumed may be said to exist”. (People v Terra, 303 NY 332, 335, app dsmd 342 US 938.)
*690 In addition to the many statements of the New York courts concerning the constitutionality of criminal law presumptions, the United States Supreme Court has repeatedly expressed its view of the circumstances that must exist before such a presumption may pass the due process requirement of the Constitution. In Tot v United States (319 US 463, 467-468) the court stated: "The Government seems to argue that there are two alternative tests of the validity of a presumption created by statute. The first is that there be a rational connection between the facts proved and the fact presumed; the second that of comparative convenience of producing evidence of the ultimate fact. We are of the opinion that these are not independent tests but that the first is controlling and the second but a corollary. Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience”.
In Leary v United States (395 US 6, 36), the Supreme Court again had the occasion to set forth the constitutionally permissible application of a criminal law presumption. In so doing the court stated that a criminal presumption is violative of due process "unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend”.
It would thus appear that the guidelines set forth with respect to determining the constitutionality of a criminal presumption are rather clear and not in dispute. The problem arises in the application of those guidelines to a particular presumption in question.
Before proceeding to examine the presumption we are here concerned with in the light of the guidelines, it may be well to summarily dispose of one of defendant’s arguments.
Defendant urges, inter alia, that the presumption is invalid because it shifts the burden of proof to the defendant. Such an argument is patently without merit. The ultimate burden of proof beyond a reasonable doubt with respect to all of the elements of the crime charged always remains with the prosecution. A presumption merely provides a method whereby certain facts are deemed to be prima facie proof of other facts. (People v Leyva, 38 NY2d 160; People v Cannon, 139 NY 32.) The question of whether the defendant had *691 knowledge of the tampering of the meter — despite the presumption — must still be proven by the prosecution beyond a reasonable doubt.
As indicated, there is very little dispute as to what requirements a criminal presumption must satisfy in order to pass the test of due process. The problem arises in determining whether a particular presumption meets such test.
The difficulty in making such a determination has been highlighted by the very recent decision of the United States Court of Appeals for the Second Circuit in Allen v County Court, Ulster County (568 F2d 998). In that case the Federal appeals court affirmed a District Court writ of habeas corpus setting aside the petitioners’ convictions entered in New York on the charge of felonious possession of a firearm. The petitioners were convicted of such possession based upon the statutory presumption of possession of a weapon by all persons occupying the automobile in which the weapon was found. (Penal Law, § 265.15, subd 3.) The conviction was affirmed by the Appellate Division, Third Department, by a divided court (49 AD2d 639) and by the Court of Appeals, likewise by a divided court (40 NY2d 505).
The basis for the decision of the Federal Court of Appeals was that the statutory presumption of possession there involved was unconstitutional on its face.
In holding the statutory presumption of weapon possession invalid the Federal court, unlike the State courts, concluded that the presumption did not meet the standards set down by the United States Supreme Court. In this connection it should be noted that this decision — at least in my view — creates no new standards or guidelines. It simply applied the heretofore expressed standards to the weapon possession presumption and found that the presumption failed to meet them.
This recent decision, however, is useful in that it demonstrates the process of analysis to be employed in determining the constitutionality of a criminal presumption.
The Federal appeals court discarded the presumption because it failed to find any rational basis for the inference of possession of a gun by the occupants of an automobile merely because of the presence of a gun in such automobile. The court pointed out (p —) that there is "nothing about the simultaneous presence of occupants and a gun in an automobile that makes it more likely than not that the former control the latter or that they even know of its presence. The *692 presumption obviously sweeps within its compass (1) many occupants who may not know they are riding with a gun (which may be out of their sight), and (2) many who may be aware of the presence of the gun but not permitted access to it”.
In distilling the wisdom of the cases treating with such criminal presumptions it would appear that the test simply stated is — in the light of human experience — does the presumption make sense? Is it logical and fair to impose the burdens of the presumption on the defendant in the circumstances of the particular case?
Let us turn now to the presumption under attack in this case. Under subdivision 6 of section 165.15 it is presumed that a user of electricity whose supply of electricity is not being properly measured by reason of meter tampering, has knowledge of such tampering.
Does the presumption make sense? Is it logical? Or, to use the language of the United States Supreme Court, can it be said that the presumed fact is more likely than not to flow from the proved fact? I conclude that the instant presumption exceeds even the strictest application of these guidelines.
Is it likely that one who will not receive a benefit would tamper with a meter absent the participation or connivance of the one benefited? Do not logic and experience teach that people do not go about risking criminal prosecution to gratuitously aid another by reducing the amount of such other person’s electric bill? Is it likely that there is some modern-day Robin Hood roaming our basements tampering with meters to the benefit of unknown consumers and to the detriment of the utility? And is it likely that even were the tampering done by another without the connivance of the user, that knowledge of such act of generosity would not be transmitted to the user? Common sense and experience dictate answers in the negative.
It should be apparent that the instant case is quite unlike the weapon in the car case dealt with in Allen v County Court, Ulster County (supra). In that case it was not only quite conceivable but even more likely that some or all of the occupants did not know that a weapon may have been concealed somewhere in the vehicle. It does not fly in the face of logic and experience to conclude that it may well be that occupants of a vehicle may not know of all the contents of the vehicle, concealed or otherwise.
*693 On the other hand, in the case with which we are here concerned, it would seem to be illogical and contrary to experience to conclude that the meter tampering was done without the knowledge of the one benefited thereby. Applying any of the tests set forth by the courts, it seems clear that the presumption here under review passes muster — and with room to spare.
I conclude therefore that there is no constitutional deficiency in the presumption set forth in subdivision 6 of section 165.15 of the Penal Law. Accordingly, the motion to dismiss is denied and the defendant is held for trial.